UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
              Plaintiff,       )
                               )
      v.                       )      No. 4:09 CR 265 ERW
                               )                     DDN
  JOSEPH SCHMIDT, III,         )
                               )
              Defendant.       )

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b).

Before the court are the motions of defendant Joseph Schmidt, III, (a) to dismiss the indictment as legally insufficient (Docs. 19, 20); (b) for disclosure of the government's intent to offer trial evidence under Federal Rule of Evidence 404(b)(Doc. 23); and (c) to suppress evidence and statements (Doc. 9 oral motion, and Docs. 21, 22 documentary motions); and of the United States for a determination of the admissibility or not of any arguably suppressible evidence (Doc. 10 oral motion).  An evidentiary hearing was held on June 18, 2009, and a supplemental hearing was held on July 9, 2009.


**I.  MOTION TO DISMISS**

Defendant Joseph Schmidt III has moved to dismiss the indictment because it is legally insufficient on its face under Federal Rule of Criminal Procedure 7(c)(1).  The undersigned disagrees.

To be legally sufficient on its face, the indictment must contain all the essential elements of each offense charged; it must fairly inform the defendant of the charge against which he must defend; and it must allege sufficient information to allow defendant to plead a conviction or an acquittal as a bar to a future prosecution.  U.S. Const. amends. V and VI; Fed. R. Crim. P. 7(c)(1); <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974); <u>United States v. Sohn</u>, 567 F.3d 392,

394 (8th Cir. 2009); <u>United States v. White</u>, 241 F.3d 1015, 1021 (8th Cir. 2001).

In this case, defendant Schmidt is charged with one count of possessing several items of child pornography on April 23, 2008, in violation of 18 U.S.C. § 2252A(a)(5)(B).[1]  The indictment alleges all the essential elements of a violation of § 2252A(a)(5)(B), i.e., that defendant (1) knowingly (2) possessed (3) a computer disk which contained an image of child pornography and (4) which disc was produced using materials that traveled in interstate commerce.  18 U.S.C. § 2252A(a)(5)(B); <u>cf.</u> <u>United States v. Bass</u>, 411 F.3d 1198, 1201 (10th Cir. 2005).  The indictment in this case contains all the elements of the crime charged.  It specifically describes the hard drive which contained the child pornography, it specifically identifies the images of child pornography contained on the disk, it alleges the images of child pornography were produced using materials that traveled in interstate commerce, and it alleges the date of the possession.  The indictment is legally sufficient on its face.

Defendant also argues that § 2252A(a)(5)(B), the statute on which the indictment depends, does not regulate activity that has "a substantial affect" on interstate commerce as required by <u>United States v. Lopez</u>, 514 U.S. 549, 558-59 (1995).  The Eighth Circuit has applied <u>Lopez</u> and the Commerce Clause of the Constitution and concluded that in passing § 2252A(a)(5)(B) Congress acted within the authority of the Commerce Clause, because the statute requires proof in each case that "the subject child pornography was produced with materials transported in interstate commerce."  <u>Cf.</u> <u>United States v. Mugan</u>, 394 F.3d 1016, 1022 (8th Cir. 2005), <u>vacated on other grounds</u>, <u>Mugan v. United States</u>, 546 U.S. 1013 (2005), <u>conviction reinstated on remand</u>, 441 F.3d 622 at 627-30 (8th Cir. 2006), <u>cert. denied</u>, 549 U.S. 890 (2006).  In the case

---

[1]In relevant parts, § 2252A(a)(5)(B) provides:

Any person who--knowingly possesses . . . any . . . computer disk, or any other material that contains an image of child pornography . . . that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall be punished . . . .

at bar, the grand jury alleges that the defendant's computer hard drive, which contained the images of child pornography, was produced outside Missouri and traveled in interstate commerce. These are facts which indicate that the use of the hard drive had a substantial affect on interstate commerce. Defendant's unconstitutionality argument is without merit.

Defendant argues that, if the evidence presented in support of the indictment did not include images of actual children, the allegations of child pornography in the indictment are legally insufficient. Because the indictment is legally sufficient on its face, the court should not further investigate to determine whether it is supported by legally obtained and sufficient evidence. See Costello v. United States, 350 U.S. 359, 363-64 (1956); United States v. Nelson, 165 F.3d 1180, 1182 (8th Cir. 1999).

To the extent the defendant is challenging the legal sufficiency of the trial evidence, this challenge must await trial.

The motion to dismiss the indictment should be denied.

## II.  PRETRIAL DISCOVERY

Defendant moves for an order that the government disclose its intention to use evidence under Federal Rule of Evidence 404(b). At the original evidentiary hearing, counsel for the United States stated that the government would use such evidence, that it includes images of child pornography other than those alleged in the indictment and which also were found on the defendant's computer, that all such evidence is within the information provided to the defense in pretrial discovery, and that this evidence is within the subject matter of the pending motion to suppress evidence. Defense counsel did not dispute this information which moots the defendant's motion.

Therefore, the motion for disclosure of Rule 404(b) evidence (Doc. 23) is denied as moot.

## III.  MOTIONS TO SUPPRESS EVIDENCE

From the evidence adduced at the hearing on the motions of defendant to suppress evidence and statements, the undersigned makes the following findings of fact and conclusions of law:

## FACTS

### March 3, 2008

1.    On March 3, 2008, St. Louis County Police Sergeant Adam Kavanaugh, the supervisor of the special investigations unit, used a file-sharing program, Phex, to search the Internet for computers offering to share child pornography.  He used the search term "10yo"[2] to look for files containing child pornography.  On the Gnutella internet network, Sgt. Kavanaugh found a computer (subject computer) that offered a video file for sharing.  The officer saw that the computer displayed the file's digital SHA1 value and that this value was identical to that of a video file known by law enforcement to contain child pornography. Sgt. Kavanaugh subpoenaed Charter Communications and received information that the subject video file was stored in a computer located at 7611 River Walk Place in St. Louis, Missouri.

2.    Sgt. Kavanaugh informed Detective Michael McCartney of his findings.  Det. McCartney verified the information by viewing the police department's investigative copy of the video of child pornography whose SHA1 value matched that of the file found in the subject computer.

3.    The SHA1 value is a Secure Hash Algorithm, which functions as a digital fingerprint for a file.  Each digital video file produces, as inherent meta data, a unique, multi-character digital algorithm that specifically identifies the file.  If any part of the SHA1 value differs from another SHA1 value, they signify different video files in at least one substantial respect.  Neither Sgt. Kavanaugh nor Det. McCartney viewed the video images then on the actual file that was observed to reside in the subject computer.  The chances of a "collision," which is when two digital video files, with some significant difference in the

_____

[2]"10yo" is a term used to refer to "10 year-old."  It has been used in previous investigations to search for child pornography.

video characteristics, share the same SHA1 value, are not mathematically significant.[3]

April 23, 2008

4.    On April 23, 2008, Det. McCartney applied for a search warrant from the Circuit Court of St. Louis County for 7611 River Walk Place to search for several categories of evidence indicating the possession of child pornography.  In his sworn, written affidavit, which was submitted in support of the search warrant, Det. McCartney described his substantial experience and training as a police officer in the investigation of child pornography.  The affidavit described the investigation that used a free and publicly available file sharing software to search for digital files that contained child pornography. The public internet software provided a list of IP addresses that were then publicly offering a digital video file known by the police by its YUO--7IBY[4] SHA1 value to contains images of child pornography.  The police investigation, with information subpoenaed on March 3, 2008 from internet service provider Charter Communications, led to an IP address used by Joseph Schmidt at 7611 River Walk Place, St. Louis, Missouri 63129.  The affidavit stated that Det. McCartney viewed a copy of the video file with the same YUO-7IBY SHA1 value with images of child pornography on April 17, 2008.  Further investigation corroborated that 7611 River Walk Place has been registered to Joseph Schmidt since June

_____

[3]Cf. United States v. Warren, 2008 WL 3010156, at * 11 n. 8 (E.D. Mo. 2008).  During the hearing the undersigned advised the parties that the undersigned had presided over a similar hearing that also dealt with digital SHA1 values in a case involving child pornography (United States v. Warren) and provided them with sufficient information to locate the opinion written in Warren and an additional week following the hearing in which to further brief the issues.    See F.R.Evid. 201(e).

During the hearing, counsel for defendant indicated that the United States government has abjured the SHA1 system for a SHA2 system.   Cf., United States v. Warren, 2008 WL 3010156, at * 1 n.4 ("The United States of America has adopted the SHA-1 hash algorithm . . . as a Federal Information SMWg02 Processing Standard").

[4]The observed SHA1 value is 32 characters in length.  Because the accuracy of this SHA1 value is not at issue, for convenience, the court has abbreviated it to "YUO--7IBY."

1999 with a telephone number registered with Charter Communications. The affidavit described what Det. McCartney learned through training and experience about the use of the Gnutella network as a source for investigating images of child pornography and SHA1 values as digital video file identifiers. The affidavit stated that when a digital video file is changed in any way, the SHA1 value of the changed file is different from that of the original file. The affidavit also stated Det. McCartney knew from training and experience that computers that access the internet for child pornography usually contain digital data indicating the ownership of the computer and the internet service accounts for the use of the internet access, and the exchange, transfer, distribution, and possession of digital files. Finally, the affidavit stated that, from his training and experience, Det. McCartney knew that persons who collect child pornography tend to keep images of child pornography for personal gratification and also transfer them to other digital devices. Upon this affidavit, Circuit Judge Maura B. McShane issued her search warrant at 2:15 p.m. on April 23, 2008. Gov. Ex. 1.

5. Later on April 23, 2008, Sgt. Kavanaugh, Det. McCartney, and other St. Louis County police officers went to 7611 River Walk Place to execute the search warrant. Following police department practice, the department's Tactical Team entered the residence with their weapons drawn, and quickly cleared and secured it. They found Joseph Schmidt, Jr., his wife[5], and their son, defendant Joseph Schmidt III, inside the residence and handcuffed them. The Tactical Team then turned the residence over to the investigating officers who then entered to complete the execution of the search warrant. The Tactical Team members were not otherwise involved in searching the residence and did not remain in it. Sgt. Kavanaugh and Det. McCartney immediately went to the

---

[5]Det. McCartney and Sgt. Kavanaugh testified that Mrs. Schmidt, the wife of Joseph Schmidt, Jr., and the mother of defendant was also present in the house. Mr. Schmidt, Jr., defendant's father, testified that his wife was not present at the time the tactical team cleared the house, but arrived later. The police report does not show that his wife was at the house. Det. McCartney testified that her absence from the police report was not a mistake; he purposely did not include her in the report.

three occupants and, while they remained handcuffed, identified themselves and stated they were there to execute a search warrant for child pornography. Det. McCartney had defendant Joseph Schmidt III step outside the residence, while Sgt. Kavanaugh unhandcuffed Mr. Schmidt Jr. and interviewed him inside the residence. Soon Sgt. Kavanaugh determined that Mr. Schmidt Jr. was not a target of the investigation, but had him remain seated inside the house while the police searched the residence and seized items.

6. Once outside the residence, Det. McCartney immediately took the handcuffs off defendant Joseph Schmidt III. He told defendant that the police were there to execute the search warrant for the computer crime against children. He told defendant that he was not under arrest. Without advising defendant of his constitutional rights to remain silent or to counsel, McCartney then asked defendant whether he owned a computer. Defendant answered in the affirmative. The officer then asked defendant whether he used file-sharing software on the computer. Defendant answered that he used Limewire software. Det. McCartney then knew that Limewire was a major source of child pornography trafficking. The purpose of the questions was to determine whether defendant should be investigated further about the child pornography matter under investigation. These questions and their answers took about two minutes. During this period of time, defendant was calm and did not appear distressed. The questions were not repeated. And Det. McCartney did not coerce defendant into answering the questions. From the answers defendant gave to the questions, Det. McCartney believed that defendant was a target of the investigation and he decided to continue the investigation by interviewing defendant at police headquarters and recording his statements.[6] At the time Det. McCartney questioned

---

[6]During the supplemental hearing, Det. McCartney testified that he had been advised by one or more prosecutors that he should not engage in a procedure where he obtained a confession from a suspect without advising the person of his <u>Miranda</u> rights, then advised the same person of his <u>Miranda</u> rights, and then asked the same questions to get a confession. Det. McCartney testified that he believed the procedure he used with defendant did not run afoul of the prosecutors' admonition because defendant did not provide a confession when he answered the
(continued...)

defendant outside the residence, Det. McCartney believed defendant was then not in custody and that, for this reason, he believed he was not legally required to give defendant the <u>Miranda</u> warnings.

7. Det. McCartney then asked defendant whether he would accompany him to the St. Louis County Police Headquarters in Clayton for a recorded interview. Det. McCartney stated clearly that defendant was not under arrest nor in custody, that he was under no obligation to go with the officer, and that, if the defendant were to go to the police headquarters, it would be on a completely voluntary basis. Det. McCartney did not tell defendant that he was free to leave or that he did not have to answer questions. Defendant answered in the affirmative that he would go with the officer. Then, while the search of the residence was still being conducted, Det. McCartney entered the residence and told Sgt. Kavanaugh that he was taking defendant to police headquarters. He then drove defendant to the police headquarters in Clayton, Missouri. During the drive, Det. McCartney told the defendant to hold his questions until they arrived at the police station, because he wanted the interview to be recorded. Thereafter, they did not speak while driving to the police station.

8. At the police station, defendant was placed in an interview room. At the beginning of the recorded interview, which occurred approximately 45 minutes after the questioning outside the residence, Det. McCartney asked defendant to confirm the events that had occurred earlier that day: the officers arrived at defendant's residence, the Tactical Team entered the residence to execute the search warrant, Det. McCartney asked defendant to go outside the residence and that defendant did so, Det. McCartney asked defendant outside the residence about whether there were computers in the house, defendant advised that there were two computers in the house, McCartney asked defendant whether he would go with the officer to answer questions about child pornography and that defendant agreed to do so, Det. McCartney advised defendant that he was not under arrest and that if he went with the officer he would be doing so voluntarily, Det. McCartney advised defendant that

---

<sup>6</sup>(...continued)
questions outside the residence.

they would not discuss the search warrant matter at all until they arrived at the police station and the interview could be recorded, and in fact no such conversation occurred.  Gov. Ex. 3.

9.     Then, Det. McCartney orally advised defendant of his constitutional rights to remain silent and to counsel, reading the rights to him from a written Warning and Waiver form, Government Exhibit 2.  Defendant also read the form, read the waiver paragraph out loud, and placed his initials next to each printed statement of a right.  At 9:14 p.m. defendant signed the form (on the line identified as "Signature of Suspect") below a preprinted statement, expressly indicating that he had read his rights, understood them, and was willing to make a statement; that he did not want a lawyer at that time; that he understood and knew what he was doing, without any promises, threats, pressure or coercion having been made to him.  Gov. Exs. 2, 3.

10.    The officer then asked defendant questions without any specific reference to the earlier questions and answers that occurred earlier outside the residence.  In answers to questions, defendant gave his full name and said he was 22 years old.  He then lived with his parents.  He was employed as a licensed EMT and was in paramedic training.  After approximately ten minutes into the interview, Det. McCartney began asking defendant about his ability to use computers. Det. McCartney continued asking defendant questions and defendant answered them and volunteered some information.  No promises or threats were made.  Defendant did not exhibit any mental or physical conditions that would make an interview inappropriate.  He did not appear to be under the influence of alcohol or narcotics.  He did not appear to suffer from any mental infirmity that would hinder his understanding of his rights.  The interview lasted approximately two hours.  Gov. Ex. 3.[7]

---

[7]During the evidentiary hearing, the first four minutes of Government Exhibit 3, the audio compact disk on which the interview of defendant at police headquarters is recorded, were played in open court on the record.  No party has argued that any other specific, recorded statements by the defendant or the interviewing officer are relevant to any fact, other than that the officer asked questions and defendant made statements.

11.   The officers, who remained at the residence after Det.
McCartney and defendant left, executed the search warrant and seized
computers and computer-related equipment as evidence.


## DISCUSSION

### SEARCH WARRANT

Defendant argues that the evidence acquired by the execution of the
search warrant should be suppressed because the length of time between
the information in the affidavit and the issuance of the warrant
rendered the information unable to support a finding of probable cause
because it was stale; the ease with which the single item of alleged
child pornography could be downloaded onto the computer ("the click of
a mouse") was insufficient information upon which to find probable cause
to believe that a crime had been committed; the search warrant affidavit
described only a single incident of activity and lacked any indication
of a pattern of activity; the search warrant was too vague to
sufficiently describe the place to be searched and the items to be
seized; the search warrant was so facially deficient that it cannot
support a finding of reasonable reliance by the executing officers; no
search warrant was issued to authorize a search of the subject computer
after it had been seized; and the search of the computer was beyond the
scope of the warrant and the contents of the computer were not readily
apparent as contraband.


### Issuance of search warrant

The first three of defendant's arguments take issue with the
lawfulness of the issuance of the search warrant in this case.   The
issue before this court when reviewing the validity of the issuance of
a search warrant is whether the supporting materials gave the issuing
judge a substantial basis for concluding that probable cause existed for
the issuance of the warrant.   United States v. Stevens, 439 F.3d 983,
987 (8th Cir. 2006) (citing Illinois v. Gates, 462 U.S. 213, 238-39
(1983)).   Probable cause means a "fair probability that . . . evidence

of a crime will be found in a particular place," given the circumstances set forth in the affidavit.  <u>United States v. Horn</u>, 187 F.3d 781, 785 (8th Cir. 1999) (quoting <u>Illinois v. Gates</u>, 462 U.S. at 238).

The matching of the SHA1 values by the officers, in the totality of the circumstances, provided a substantial basis for the issuing judge to find probable cause to believe the defendant's computer contained a digital video file which contained images of child pornography, even though the subject video file itself was not viewed on defendant's computer before the warrant was issued.  <u>United States v. Cartier</u>, 543 F.3d 442, 446-47 (8th Cir. 2008).


Identity of the SHA1 values

Defendant argues in his post-hearing memorandum that it is possible that the officers could have mistakenly concluded that the 32-character SHA1 value displayed on defendant's computer differed from the 32-character SHA1 value of the video known by the police to contain images of child pornography.  However, the search warrant affidavit stated that the 32-character SHA1 values were the same and no evidence adduced at the hearing indicated the contrary.  This argument is without merit.


Staleness of information

The subject affidavit described the discovery on March 3, 2008, of a digital video file that contained images of child pornography.  The affidavit was submitted to the issuing judge on April 23, 2008 and the warrant was issued on that day.  Defendant argues that the information about the video file became stale by the time the search warrant was issued.

Stale information is information in a search warrant affidavit that, even when considered in its relationship to the totality of the information in the affidavit, does not support a finding of probable cause to believe that the contraband would be in the place to be searched at the time the warrant is issued.  There is no formula for determining when information has become stale.  The timeliness of the information supplied in an affidavit depends on the circumstances of the case, including the nature of the crime under investigation;  the lapse of time is least important

when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated.  <u>United States v. Horn</u>, 187 F.3d 781, 786 (8th Cir. 1999).  Whether or not search warrant affidavit information is stale can depend also on the nature of the crime under investigation.  <u>United States v. Smith</u>, 266 F.3d 902, 904-05 (8th Cir. 2001)("In investigations of ongoing narcotic operations, 'intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.'")(citation omitted.)  <u>See also</u> <u>United States v. Hartje</u>, 251 F.3d 771, 775 (8th Cir. 2001)(one month old drug transaction was not stale, in light of ongoing nature of the crime), <u>cert. denied</u>, 534 U.S. 1116 (2002).

In <u>Horn</u> the search warrant affidavit contained information in a letter that was written three months before the search warrant for child pornography was issued.  However, the affidavit contained information indicating that defendant owned a lot of pornographic materials and duplicating equipment.  The Eighth Circuit stated, "Furthermore, there was a fair probability that if he had received child pornography from the woman in Texas, it would still be in his possession even three or four months later."  187 F.3d at 787.

In the case at bar, the passage of time was only seven and one-half weeks between the discovery of the video file on defendant's computer and the issuance of the warrant.  The affidavit also stated that, from the affiant's training and experience, even if the subject video file was removed from the computer, evidence of its earlier presence would remain, and that people who collect child pornography tend to keep it available for self-gratification and to transfer copies to others.

Upon the totality of the information set forth in the affidavit, the undersigned concludes that the information in the affidavit did not become stale by the time the warrant was issued.


Nature of the probable cause evidence

Defendant argues that the ease with which the single item of alleged child pornography could be downloaded onto the subject computer ("the click of a mouse") was insufficient information upon which to find probable cause to believe that a crime had been committed.  Defendant's

argument is without merit.  The ease of acquisition of the item of child
pornography does not indicate in any way that the described item was not
possessed in the subject computer.


No pattern of activity

Defendant argues that the possession of a single item of child
pornography, in the circumstances described in the affidavit, does not
indicate a pattern of criminal activity.  This argument is without merit
because the statute which underlies the indictment does not require a
pattern of criminal activity.  Possession of a single item of child
pornography is sufficient to violate the statute.  18 U.S.C. §
2252A(a)(5)(B)(knowing possession of a computer disk that contains "an
image of child pornography" is prohibited).


Description of place to be searched and items to be seized

Defendant argues that the search warrant did not describe with
sufficient particularity the place to be searched and the items to be
seized.  The undersigned disagrees.

Under the Fourth Amendment, the language of a search warrant must
describe the items to be seized with sufficient particularity "to enable
the searcher to reasonably ascertain and identify the things authorized
to be seized."  <u>United States v. Saunders</u>, 957 F.2d 1488, 1491 (8th
Cir.), <u>cert. denied</u>, 506 U.S. 889 (1992); <u>see also</u> <u>United States v.
Horn</u>, 187 F.3d at 788.  The standard is one of "practical accuracy,"
recognizing that the required specificity hinges on the circumstances
of each case.  <u>United States v. Peters</u>, 92 F.3d 768, 769-70 (8th Cir.
1996); <u>United States v. Strand</u>, 761 F.2d 449, 453 (8th Cir. 1985).  A
warrant naming only a generic class of items may be sufficient, if the
items to be seized cannot be more precisely identified at the time that
the warrant is issued.  <u>Horn</u>, 187 F.3d at 788.

The search warrant at bar described the place to be searched thus:

> 7611 River Walk Place, St. Louis, Missouri 63129, is a single
> family two story residence with multicoloured brick facade
> and tan siding.  The residence has a brown shingled roof.
> The numbers 7611 are located on a white mailbox in front of

- 13 -

the residence.  The numbers on the mailbox are black and are
on white decals.  There is a three car attached garage to the
right of the residence.

Gov. Ex. 1 at 1.  Defendant does not point out how this description is
not sufficiently specific, how this place could be mistaken for another.

The warrant describes the items to be seized thus:

TO SEIZE AND SEARCH ANY AND ALL ELECTRONIC DATA PROCESSING
AND STORAGE DEVICES, COMPUTERS AND COMPUTER SYSTEMS INCLUDING
CENTRAL PROCESSING UNITS, INTERNAL PERIPHERAL STORAGE DEVICES
SUCH AS FIXED DISCS, EXTERNAL HARD DISCS, FLOPPY DISCS AND
DISCETTES (sic), TAPE DRIVES AND TAPES, OPTICAL STORAGE
DEVICES OR OTHER MEMORY STORAGE DEVICES, PERIPHERAL
INPUT/OUTPUT DEVICES SUCH AS KEYBOARDS, PRINTERS, VIDEO
DISPLAY MONITORS, OPTICAL READERS AND RELATED COMMUNICATION
DEVICES SUCH AS MODEMS, ROUTERS AND OTHER WIRELESS DEVICES;
ANY AND ALL CAMERAS AND RELATED EQUIPMENT, VIDEO AND AUDIO
RECORDERS AND ALL RELATED RECORDING EQUIPMENT, AND ANY AND
ALL PHOTOGRAPHS, COPIES OF PHOTOGRAPHS AND ANY MANUFACTURED
HARD COPY OF IMAGES RELATED TO CHILD PORNOGRAPHY, ANY AND ALL
LOGS CONTAINING USER NAMES, PASSWORDS AND DOCUMENTATION OR
OTHER IDENTIFIERS NECESSARY TO EXAMINE OR OPERATE ITEMS.
TOGETHER WITH SYSTEM DOCUMENTATION, OPERATING LOGS AND
HANDWRITTEN NOTES RELATED TO USER IDENTIFICATIONS, PASSWORDS
AND OR CHILD PORNOGRAPHY.

Id. The focus of the investigation described in the search warrant
affidavit was the use of computer equipment to possess images of child
pornography.  The description of the items to be seized and searched is
sufficiently specific to guide the officers executing the warrant to
seize only items related to that crime.


Facially sufficient

Defendant argues that the warrant is so facially deficient that it
cannot support a finding of reasonable reliance by the executing
officers.  This argument depends upon the other arguments about the
subject warrant's language.  The undersigned has found the search
warrant to be legally sufficient on its face.  This argument is without
merit.


Search of computer

Defendant argues that the electronic search of the defendant's computer was outside the scope of the warrant and another search was necessary to authorize its search. The undersigned disagrees.

First, as shown above, the warrant expressly authorized the officers to seize and also to search the seized computer and related items.

Second, the probable cause showing in the underlying affidavit established probable cause to believe that a computer in the residence contained contraband.

<u>DEFENDANT'S STATEMENTS</u>

Defendant argues that, although he was not given his <u>Miranda</u> rights, he was questioned and made statements while in handcuffs and detained at his home. The undersigned credits the testimony of Det. McCartney that he immediately took the handcuffs off defendant once they went outside the residence. He then told defendant they were there to execute the search warrant for computer evidence of criminal activity against children and that he was not under arrest. The facts found by the undersigned lead to the conclusion that defendant was not in custody for <u>Miranda</u> purposes when he gave his first statements immediately outside his residence.

The Eighth Circuit has recently stated:

> "[W]arnings are required when interrogation is 'initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of is freedom of action in any significant way.'" . . . "[A] suspect is entitled to <u>Miranda</u> protection when he is 'in custody,' and . . . 'the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" . . . We must determine whether, under the totality of the circumstances, "a reasonable person would have felt at liberty to terminate the interrogation . . . ."

<u>United States v. Lawson</u>, 563 F.3d 750, 752-53 (8th Cir. 2009)(citations omitted); <u>United States v. Cartier</u>, 543 F.3d at 448. The facts of <u>Lawson</u> and <u>Cartier</u> are not entirely similar to those in the case at bar. But they provide substantial guidance. In <u>Lawson</u>, in a visit to Lawson's home a week after a search warrant had been executed there, the agent told him that he did not have to answer the agent's questions, the

- 15 -

agent told him he was not going to be arrested, Lawson's movement was not restricted in any way, Lawson was not restrained, he was interviewed in his own home, he was not physically threatened, and he was interviewed for less than an hour. In Cartier, Cartier had driven his own vehicle from his place of employment to facilitate the execution of a search warrant, and he was advised that he was not required to make a statement and that he was free to leave.

The undersigned concludes from the totality of the circumstances of the case at bar that, when defendant made his statements to Det. McCartney outside his residence, he was not in custody for Miranda purposes. First, immediately upon exiting the home the officer removed defendant's handcuffs. This was more than a symbolic indication of freedom of movement; it was a real granting of freedom of movement. A reasonable person would understand that his status as a detained person had changed. He was also told about the execution of the search warrant, thus identifying the interior of the residence reasonably as a special place of police action, but not limiting defendant's ability to move outside the residence. Det. McCartney then expressly told defendant that he was not under arrest, officially reinforcing what was inferentially apparent. A reasonable person in defendant's circumstances would believe he was at liberty to move and to not respond to the officer's questions. Thus, the statements made by defendant outside his home after the handcuffs were removed should not be suppressed.

Thereafter, Det. McCartney asked defendant whether he would voluntarily go to the police station with Det. McCartney. The officer stated the purpose was to record the statements defendant made outside the residence. He again told defendant he was not under arrest or in custody, and that he was under no obligation to go to the police station. Nevertheless, defendant went with him to the station without any coercion.

There is no dispute that at the police station, at the beginning of the recorded interview, defendant was orally advised of his constitutional rights to remain silent and to counsel, as prescribed by Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). Defendant expressly

waived his rights in writing, and, without promises, threats, or coercion, answered the officer's questions.  Berkemer v. McCarty, 468 U.S. 420, 433 n. 20 (1984).

Defendant argues that the "midstream" or "question-first" procedure employed by the police to obtain his statements in this case were proscribed by the Supreme Court in Missouri v. Seibert, 542 U.S. 600 (2004).  In Seibert, the police awakened Patrice Seibert at 3:00 a.m. at a hospital where her son Darien was recovering from burns.  This was five days after Darien and friends in her presence planned to incinerate the body of her other son who had very recently died in his sleep, to avoid charges of neglect.  At the hospital the police formally arrested Seibert and took her to the police station.  There she was left alone in an interview room for 15 to 20 minutes.  Then an officer questioned her for about 40 minutes without having advised her of her Miranda rights.  After making an incriminating statement, the officer gave her a 20 minute coffee and cigarette break.  Then, the officer returned with a tape recorder, gave her the Miranda warnings, obtained a signed written waiver of those rights from her, and resumed questioning her, recording her statements.  During this time the officer "confronted her with her prewarning statements."  542 U.S. at 604-05.

The Supreme Court stated the issue before it thus:

The threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function "effectively" as Miranda requires.  Could the warnings effectively advise the suspect that he had a real choice about giving an admissible statement at that juncture? Could they reasonably convey that he could choose to stop talking even if he had talked earlier? For unless the warnings could place a suspect who has just been interrogated in a position to make such an informed choice, there is no practical justification for accepting the formal warnings as compliance with Miranda, or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment.

Id. at 611-12.  The issue is not whether the post-Miranda statements are to be suppressed as the fruit of the earlier unwarned and inadmissible statements.  Id. at 612 n. 4; Oregon v. Elstad, 470 U.S. 298, 300, 309 (1985).  Rather, the issue is whether the subsequent statements were

knowingly and voluntarily made, i.e. were the <u>Miranda</u> warnings
effective. "If yes, a court can take up the standard issues of
voluntary waiver and voluntary statement; if no, the subsequent
statement is inadmissible for want of adequate <u>Miranda</u> warnings, because
the earlier and later statements are realistically seen as parts of a
single, unwarned sequence of questioning. <u>Seibert</u>, 542 U.S. at 612 n.
4. The Court restated the matter as whether the person being
interrogated at the police station would see the questioning there "as
a new and distinct experience" in which the <u>Miranda</u> warnings presented
"a genuine choice whether to follow up on the earlier admission." <u>Id.</u>
at 615-16.

In <u>Seibert</u>, the Court concluded that the procedures followed by the
police undermined the effectiveness of the <u>Miranda</u> warnings. The warned
interrogation occurred at the same place as the earlier unwarned
questioning. The warned questioning followed the unwarned by only about
20 minutes. After giving the <u>Miranda</u> warnings, the officer did not tell
Seibert that the earlier statements could not be used against her. The
language used in the recorded, warned questioning indicated that the two
periods of questioning as part of a unified continuum, rather than as
separate events. The issue was stated as whether "a reasonable person
in the suspect's shoes would [] have understood [the <u>Miranda</u> warnings]
to convey a message that she retained a choice about continuing to
talk." <u>Id.</u> at 617.

The factors, issues, and conclusions in <u>Seibert</u> indicate that the
<u>Miranda</u> warnings given to defendant at the police station were not
rendered constitutionally ineffective because defendant gave earlier
unwarned statements. First, the unwarned questioning and the post-
<u>Miranda</u> questioning did not occur at the same place. The defendant and
the officer traveled by motor vehicle from the residence to the police
station. Whether or not the officer told defendant that the earlier
questioning was not admissible is irrelevant because the undersigned has
concluded that defendant's earlier statements are admissible. During
the first ten minutes of the recorded interview, the business-like
language used by the officer in giving defendant his <u>Miranda</u> warnings
indicated that the two periods of questioning were indeed separate

events and were not part of a unified continuum. The undersigned concludes from the totality of the circumstances that a reasonable person in defendant's circumstances would have believed that he had the ability not to answer the officer's questions. Therefore, the Miranda warnings were constitutionally adequate.

In his post-hearing memorandum, defendant argues that during the evidentiary hearing, the undersigned sustained the government's objections to defense counsel's questions about whether Det. McCartney purposely intended to bypass the safeguards of the Miranda warnings by using a two-part interrogation. The undersigned sustained the objection upon the ground that the officer's subjective intent was irrelevant. Defendant argues that the officer's subjective intention was an important factor in Justice Kennedy's concurring opinion in Seibert. Indeed, Justice Kennedy determined that the officer's intention was important and that in this respect he differed from the majority opinion:

> The admissibility of postwarning statements should continue to be governed by the principles of Elstad unless the deliberate two-step strategy was employed. If the deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made. Curative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the Miranda warning and of the Miranda waiver. For example, a warning may suffice in most circumstances, as it allows the accused to distinguish the two contexts and appreciate that the interrogation has taken a new turn. Cf. Westover v. United States, decided with Miranda v. Arizona, 384 U.S. 435 (1966). Alternatively, an additional warning that explains the likely inadmissibility of the prewarning custodial statement may be sufficient. No curative steps were taken in this case, however, so the postwarning statements are inadmissible and the conviction cannot stand.

Missouri v. Seibert, 542 U.S. at 622.

Defendant argues that the Eighth Circuit has adopted as a key factor Justice Kennedy's consideration of whether the two-step interrogation process was calculated by the interrogating police as a way to circumvent Miranda. The undersigned agreed and thereupon ordered

the supplemental hearing to thoroughly consider the issue.  <u>See</u> <u>United States v. Black Bear</u>, 422 F.3d 658, 664 (8th Cir. 2005); <u>United States v. Ollie</u>, 442 F.3d 1135, 1142 (8th Cir. 2006); <u>cf.</u> <u>United States v. Elzahabi</u>, 557 F.3d 879, 884 (8th Cir. 2009).

After considering the entire hearing record, the undersigned concludes that defendant is not entitled to the suppression of his statements.  This case differs from <u>Seibert</u> in several important respects.  First, the brief questioning outside the defendant's residence was not unconstitutional.  The undersigned has determined that defendant was not then in custody for <u>Miranda</u> purposes.  So, it would have been incorrect for Det. McCartney to tell defendant during the recorded interview at the police station that the earlier statements were likely inadmissible.  Second, there were several indications that the interview outside the residence and the one in the police station were separate events: they were separated by some 45 minutes in time, they were separated by location, one was in the familiar environs of the defendant's residential area, and the other was in the police station interview room.  Furthermore, while at the beginning of the recorded interview Det. McCartney had defendant affirm the circumstances of the questioning outside the residence, the questioning preliminary to the questions about the defendant's use of the computer was substantially different from the nature of the questions asked outside the house. Then, defendant was given his <u>Miranda</u> rights without any statement or indication by the officer that they were meaningless because defendant had already given statements.

Finally, the undersigned concludes that defendant's statements outside the residence and during the interview were voluntary.  They were not the result of overreaching, such as coercion, deception, or intimidation; defendant's will was not overborne and his ability to decide not to cooperate was not impaired.  <u>Colorado v. Connelly</u>, 479 U.S. at 169-70; <u>United States v. Santos-Garcia</u>, 313 F.3d 1073, 1079 (8th Cir. 2002).

<u>**ORDER AND RECOMMENDATION**</u>

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of the defendant for disclosure of the government's intent to offer trial evidence under Federal Rule of Evidence 404(b)(Doc. 23) is denied as moot.

**IT IS FURTHER ORDERED** that the motion of the United States for a determination of the admissibility or not of any arguably suppressible evidence (Doc. 10 oral motion) is denied as mooted by the conduct of the evidentiary hearing and the rendering of the Recommendation by the undersigned.

**IT IS HEREBY RECOMMENDED** that the motions of the defendant to suppress evidence and statements (Doc. 9 oral motion, and Docs. 21, 22 documentary motions) be denied.

The parties are advised they have until August 4, 2009 to file documentary objections to this Order and Recommendation.  The failure to file timely documentary objections may waive the right to appeal issues of fact.

                              ___/S/___David D. Noce_____
                              **UNITED STATES MAGISTRATE JUDGE**


Signed on July 22, 2009.